Sosman, J.
Plaintiff Eckel Industries, Inc. (Eckel) has brought the present action to recover amounts owing to it on a construction contract it performed for *531 defendant Verson Europa, S.A. (Verson Europa). Plaintiff has also named Verson International Group, PLC (Verson International), the parent of Verson Europa, and Clearing International, Ltd. (Clearing International), another subsidiary of Verson International, on a theory of “piercing the corporate veil.” Defendant Clearing International has moved for summary judgment, contending that there is no evidence that would support that theory so as to make it liable for the debts of its fellow subsidiary. For the following reasons, defendant’s motion is ALLOWED.
Facts
Defendant Verson Europa, a Belgian corporation with its principal place of business in Charleroi, Belgium, was in the business of manufacturing metal forming presses. Verson Europa was a wholly owned subsidiary of Verson International, a British corporation located in Stourbridge, England. Other subsidiaries of Verson International include defendant Clearing International, a British corporation located in Wednesbury, England. Clearing International is also in the business of manufacturing metal forming presses and related equipment. Verson Europa and Clearing International, along with four other subsidiaries of Verson International, made up Verson International’s “Press Division.” At the time of the transactions at issue in this case, Verson International was anticipating a sale of its Press Division and, in anticipation of that disposition, the operations of the Press Division companies (including Verson Europa) were funded by overdraft facilities, by support from Verson International, and by support from other subsidiaries. At the time, Verson International and its Press Division knew that the financial condition of Verson Europa was precarious.
In 1995, Verson Europa had a contract to provide and install a press at Sikorsky Aircraft Corporation’s plant in Connecticut. As part of that installation, Verson Europa had to provide an enclosure to reduce noise. In October 1995, Verson Europa contacted an agent in the industry, one Tom Cheneski from a company known as Fluid Forming Technologies, seeking the names of possible vendors in the Connecticut area who could supply the necessary sound reduction enclosure.
Cheneski in turn contacted plaintiff Eckel, whereupon Eckel contacted Verson Europa indicating that it was interested in making a proposal. On October 17, 1995, Antonio Dipietrantonio, Verson Europa’s Engineering Manager, sent Eckel a fax requesting a quotation and delivery time on the project. The letterhead on that fax identified the sender as “VERSON EUROPA S.A.,” with Verson Europa’s address in Belgium, and noted in fine print at the bottom that Verson Europa was “A Member of the Verson International Group pic.”
On January 4, 1996, Eckel faxed to Verson Europa its proposal for furnishing the sound enclosure. The proposal was addressed to “Verson Europa,” and an information copy sent by Eckel to Tom Cheneski also indicated that the proposal had been faxed to “Verson Europa.” In its communication to Cheneski, Eckel offered to meet with “representatives from Verson Europa” if they were coming to the United States. On January 29, 1996, Eckel received a further fax from Antonio DiPietrantorio referencing Eckel’s prior quote to furnish the equipment and asking for a further quote that included installation of the enclosure on site. That fax bore the letterhead “VERSON EUROPA S.A. — CLEARING INT. Ltd.” Eckel responded by fax dated February 5, 1996 quoting a price for the installation of the sound enclosure. Notwithstanding the reference to “CLEARING EMT. Ltd.” on Verson Europa’s January 29 fax letterhead, Eckel’s response was simply addressed to “Verson Europa” and made no mention of or reference to any other company or affiliate of Verson Europa.
On March 19, 1996, Verson Europa sent Eckel a purchase order for furnishing, shipping and installation of the enclosure on site, accepting the proposals that Eckel had submitted for the job. The letterhead on that purchase order was identical to the letterhead on the October 17, 1995 original request for a quotation, identifying the purchaser as “VERSON EUROPA S.A.” along with the notation that Verson Europa was “A Member of the Verson International Group pic.” The purchase order contained no reference to Clearing International (or to any other subsidiary of Verson International).
Eckel proceeded with the manufacture of the sound enclosure. During the course of manufacture, Eckel had periodic communications with personnel from Verson Europa with regard to detailed specifications and the anticipated timing of the installation. From the date of the purchase order up through the end of July 1996, Eckel and Verson Europa exchanged eight faxes on these subjects, with all of the correspondence to Eckel on letterhead identifying “Verson Europa S.A.” as the sender and all of Eckel’s responses identifying “Verson Europa” as the company to whom the fax was sent. In addition, on July 20, 1996, Eckel sent a notice concerning a commission on the project to a company known as Controlled Acoustics. That commission statement identified that the order in question was from “Verson Europa.” Eckel also went to the Sikorsky Aircraft site to meet with Mr. DiPietrantonio, Verson Europa’s Engineering Manager. At no point during Eckel’s manufacture of the enclosure did anyone from Eckel write to, speak with or meet with anyone other than employees of Verson Europa, and none of the correspondence back and forth contained any reference to Clearing International or any subsidiary of Verson International other than Verson Europa itself.
By the end of July, Eckel had completed manufacture of the enclosure and was ready to proceed with shipping and installation at Sikorsky Aircraft’s plant. However, due to problems with the installation of the *532 press itself, Verson Europa instructed Eckel that it was not yet ready for shipment and installation of the sound enclosure. Eckel therefore held onto the equipment and awaited further instructions as to timing for the completion of the installation.
Meanwhile, on August 2, 1996, Verson Europa sent Eckel an inquiry asking for a proposal on an enclosure similar to the Sikorsky Aircraft proj ect that would have different noise reduction specifications. That request was again sent on letterhead identifying the sender as “VERSON EUROPA S.A.” Eckel responded with a detailed quotation on August 4, 1996, addressing that quotation to “Verson Europa.” In that quotation, Eckel stated: “We are confident that you will be pleased with the quality of the enclosure that is to be installed at Sikorsky, We would like to have you consider us for your enclosure requirements.”
On August 8, 1996, Eckel received a fax from a Mr. Ruelle projecting that the installation at Sikorsky would likely go forward sometime between August 26 and August 28 and confirming that they would be setting a precise installation date by August 20. The letterhead for this fax identified the sender as “CLEARING INTERNATIONAL [] VERSON EUROPA SA” with the further legend, “A member of Verson International Group pic.” On August 13, 1996, Mr. Ruelle sent Eckel another fax using the same style letterhead. That fax confirmed installation dates of August 26 and 27 and specified the division of responsibility with respect to the wiring for the installation.
On August 21, 1996, Mr. Bonacini from Verson Europa sent a fax to Eckel advising that there had been some further setback with the press installation at Sikorsky Aircraft and that the installation of the enclosure would therefore be further delayed for an unspecified period of time. That fax letterhead bore the name of “VERSON EUROPA S.A.” and had no reference to any affiliate of Verson Europa. On September 3, 1996, there was further communication between Mr. Bonacini and Eckel concerning the overtime costs for Eckel to do the late installation. Eckel sent its fax to Bonacini at “Verson Europa,” advising Eckel of the overtime costs for weekend installation. Eckel also advised that “[t]he enclosure was completed and invoiced over a month ago” and requested that payment be released. Notwithstanding the reference to Clearing International as an affiliate of Verson Europa’s and. a fellow member of Verson International on the fax letterhead for Mr. Ruelle’s August 8 and August 13 faxes, Eckel’s subsequent communications continued to be addressed simply to “Verson Europa.”
In a handwritten reply to Eckel’s September 3 fax, Mr. Bonacini pointed out that the purchase order had promised payment 30 days after installation, but he indicated that Eckel would be paid one week after installation, projected to be around mid-September. On September 5, 1996, Eckel confirmed that the enclosure had been picked up for delivery and installation at Sikorsky Aircraft the following day, September 6. The installation was completed, whereupon Eckel submitted its invoice for $44,055.
Despite completion of the installation, Eckel’s invoice was not paid. At some point, Eckel called Verson Europa to follow up on its request for payment and was advised that Verson Europa had been placed into receivership. As part of the receivership proceedings in Belgium, Clearing International ultimately purchased some (but not all) of the assets of Verson Europa for approximately $100,000.[1]
As anticipated, the remaining components of Ver-son International’s Press Division (including Clearing International) were sold, with that closing occurring by mid-October 1996. Clearing International, which had always been in the metal forming press business, subsequently solicited business with Sikorsky Aircraft. As part of that solicitation, Clearing International explained that it “was formerly a member of Verson International Group, pic” and that it had contracted with “the key design, assembly and service personnel who were previously employed by Verson Europa and who were involved in the design, assembly and service of Fluid Cell Presses.”
Eckel has not been paid for the manufacture and installation of the sound enclosure, and there will not be any funds from the receivership with which to pay Eckel.
Discussion
“[C]orporations are to be regarded as separate entities where there is no compelling reason of equity ‘to look beyond the corporate form for the purpose of defeating fraud or wrong,’ ” and the corporate veil will be pierced “only ‘in rare particular situations in order to prevent gross inequity.’ ” Gurry v. Cumberland Farms, Inc., 406 Mass. 615, 625-26 (1990), quoting My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 620 (1968). The corporate veil may be pierced where there has been “active and direct participation by the representatives of one corporation, apparently exercising some form of pervasive control, in the activities of another (corporation] and there is some fraudulent or injurious consequence of the in-tercorporate relationship” or where there has been “confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting.” My Bread Baking Co., 353 Mass. at 619.
In the present case, plaintiff has no evidence that Clearing International had any “active and direct participation” in Verson Europa’s activities at all, let alone anything rising to the level of “pervasive control” over Verson Europa. Nor has plaintiff shown any “confused intermingling of activity, ” “substantial disregard of the separate nature of the corporate entities,” or “serious *533 ambiguity” about the capacity in which Verson Europa and Clearing International were acting. Of particular importance is the simple fact that Eckel itself never had any misunderstanding as to the identity of its customer. It understood that Verson Europa was its customer, that its contract was with Verson Europa, and that payment was to be made by Verson Europa.
The only evidence of “confusion” that Eckel can point to is the rare appearance of a reference to “CLEARING INT. Ltd.” on letterhead that listed “VER-SON EUROPA S.A.” with equal prominence.[2] Overwhelmingly, however, Verson Europa’s communications to Eckel (including the purchase order contract itself) came on letterhead listing only Verson Europa as the sender, and all of Eckel’s own correspondence to its customer was addressed solely to “Verson Europa.” There is no evidence to suggest that Eckel really thought its customer was Clearing International, or that it thought Clearing International was the real party behind the contract, or that it relied on the financial strength of Clearing International when it agreed to perform this contract for Verson Europa.
Eckel also contends that it was “fraud” for Verson International to continue to operate Verson Europa when it knew that it would be selling Verson Europa as part of its Press Division and when it knew that Verson Europa was in difficult financial straits. However, Eckel points to no misrepresentation made by anyone, and no representation at all from Clearing International, on the subject of Verson Europa’s financial condition. The mere continued operation of a financially troubled subsidiary is not “fraud,” and it is certainly not a “fraud” committed by a fellow subsidiary. In the absence of some misrepresentation by Clearing International about Verson Europa’s condition on which Eckel reasonably relied to its detriment, there is no “fraud” for which Clearing International may be held liable.
Finally, Eckel points to Clearing International’s later acquisition of some of Verson Europa’s assets, Clearing International’s contracting with certain technical personnel previously employed by Verson Europa, and Clearing International’s solicitation of Sikorsky Aircrafts ongoing press business. These events all took place well after Eckel had fully performed its contract, and they can not have contributed to any “confusion” on Eckel’s part as to the identity of its customer.[3]
ORDER
For the foregoing reasons, defendant Clearing International’s motion for summary judgment is ALLOWED.

 The assets in question consisted of some patents held by Verson Europa and some items of equipment. The purchase price for these assets had to be approved as a fair price by the magistrate as part of the receivership proceedings. Eckel has not produced any evidence to suggest that the $100,000 paid by Clearing International was inadequate, unfair or improper.

 Indeed, only one such “confusing” fax letterhead was received prior to entering the contract itself, and the other two versions of this letterhead came only after Eckel had already completed the manufacture of the enclosure.

 Eckel has not argued, nor could it successfully argue, that the purchase of certain specific assets of Verson Europa from the receivership imposed successor liability on Clearing International by operation of law. There is no suggestion that Clearing International’s purchase of patents and equipment from the receivership would result in the assumption of Verson Europa’s liabilities.